[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 853 
This case concerns the propriety of the circuit court's grant of a variance in a zoning matter. We reverse the judgment of the trial court and render a judgment for the Board of Zoning Adjustment for the City of Fultondale ("the Board").
 Facts and Procedural History
Robert B. Summers ("Summers") is the owner of a 2.08-acre parcel of land in the City of Fultondale. Summers purchased the property approximately 18 years before the present litigation. For approximately 15 years, the property contained a single-family dwelling that Summers leased as rental property to various occupants. In late summer 1998, Summers decided to construct a mini-storage facility on the property. In preparation for constructing the mini-storage facility, Summers allowed the City of Fultondale to burn the house that was on the property and to use the burning as a training exercise for city firefighters.[1]
In August 1998, Summers contacted the City of Fultondale regarding his desire to construct a mini-storage facility on the property. Pursuant to the City's comprehensive zoning ordinance, a mini-storage facility fell within the "special exceptions" category to the "B-2 general business classifications."
The zoning ordinance for the City of Fultondale permits the following uses in the B-2 general business district:
"A. Commercial Uses
"1. Bakeries (Minor)
"2. Business or Professional Offices
"3. Banks or Financial Services
"4. Business Support Service
"5. Clinics
"6. Commercial Parking
"7. Commercial Schools
"8. Convenience Stores
"9. Day Care Centers
"10. Entertainment (Indoor)
"11. General Retail Businesses (Enclosed)
"12. General Retail Businesses (Unenclosed)
"13. Home Improvement Centers
"14. Medical Support Services
"15. Personal Services
"16. Printing Establishment (Minor)
"17. Restaurants (Minor)
"18. Studios
"19. Vehicle Repair (Minor, See Definition Section)
"20. Vehicle Sales or Rentals *Page 854 
"B. Institutional Uses
"1. Clubs
"2. Community Centers or Civic Centers
"3. Community Service Clubs
"4. Public Utility Services"
The zoning ordinance further classifies the following as "special exception uses" permitted under the ordinance, subject to the approval of the Board and the issuance of appropriate permits by the City:
"A. Commercial Uses
"1. Campgrounds
"2. Car Washes
"3. Funeral Homes
"4. Garden Centers or Nurseries
 "5. Gasoline Service Stations, Subject to Article VIII, Section 4.0
"6. Hotels and Motels
"7. Liquor Lounges
 "8. Major Vehicle Repair Services as defined in Article IV, Definitions.
 "9. Mini-warehouses, Subject to Article VIII, Section 10.0
 "10. Restaurants (Fast Food, Subject to Article VIII, Section 5.0)
 "11. Shopping Centers, Subject to Article VIII, Section 3.0
"12. Truck Stops
"B. Institutional Uses
"1. Country Clubs
"2. Hospitals
"3. Parks
"4. Places of Worship
"5. Public Assembly Centers
 "6. Public Buildings, Subject to Article VI, Section 2.0, Subsection 2.5
"7. Public Utility Facilities
"8. Schools
 "9. Nursing Care Facility, See Section VIII, Section 7.0
"10. Domiciliary Care Facility"
As is evidenced by the foregoing ordinance, to be classified as a "special exception" use, the construction of Summers's proposed mini-storage facility was subject to the approval of the Board. The ordinance further required that construction of a mini-storage facility was subject to the requirements enumerated in Article VIII, Section 10.0, of the Fultondale zoning ordinance. Article VIII, Section 10-A-4, required, among other things, that "a minimum lot size of three (3) acres" was necessary before the construction of a "mini-warehouse development" would be permitted.
Summers subsequently provided the City with a survey of his property, which revealed that his parcel consisted of only 2.08 acres. Once the City discovered that his property did not meet the minimum size requirement for construction of a mini-warehouse, it informed Summers that he would be required to obtain a variance from the Board before a permit could be issued. Summers requested an "area variance," which the Board unanimously denied. In requesting the area variance, Summers asserted that the moneys he had expended in purchasing equipment for construction of the mini-storage facility constituted a "hardship" entitling him to the variance.
Summers appealed the denial of the variance to the Jefferson Circuit Court and demanded a trial by jury. Following the close of all the evidence, the Board moved for a judgment as a matter of law ("JML"), asserting that Summers had failed to present evidence indicating any "unnecessary hardship" that would entitle him to a variance from the lot-size requirement. The trial court denied the Board's motion and submitted the case to the jury. The jury returned a verdict in favor of Summers; however, it made the grant of the area variance subject to three *Page 855 
conditions: (1) that Summers obtain the approval of adjoining property owners for the construction of the mini-warehouses; (2) that he comply with all restrictions and sections of the zoning ordinance regarding B-2 mini-warehouses contained in the Fultondale zoning book with the exception of Article VIII, Section 10-A-4; and (3) that he have all planning and engineering feasibility reports completed by a licensed planner or engineer. The Board moved for a judgment notwithstanding the verdict and/or for a new trial, asserting the same grounds it presented in its JML. The trial court denied the motion. The Board appeals.
 Analysis
Because this is an appeal from the trial court's denial of a motion for JML, we apply the same standard the trial court used initially in granting or denying the motion. Employees' Benefit Assoc. v. Grissett,732 So.2d 968, 974 (Ala. 1998). "In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling."Id. at 975 (citation omitted).
"In situations where a variance is at issue, the primary question is whether due to special conditions, a literal enforcement of a zoning ordinance will result in [an] unnecessary hardship." Sanders v. Boardof Adjustment of the City of Chickasaw, 445 So.2d 909, 912 (Ala.Civ.App. 1983). Although we recognize that whether an "unnecessary hardship" exists is generally a question of fact, we have recognized that the resolution of this issue requires an application of the law to the facts. Ex parte Board of Zoning Adjustment of the City of Mobile,636 So.2d 415, 417 (Ala. 1994). However, "[w]hen a trial court improperly applies the law to the facts, the presumption of correctness otherwise applicable to the trial court's judgment has no effect." Id. at 418.
We have repeatedly recognized that variances should be granted sparingly, and only under unusual and exceptional circumstances where the literal enforcement of the ordinance would result in unnecessary hardship. Ex parte Chapman, 485 So.2d 1161, 1162 (Ala. 1986); see also Exparte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415, 417
(Ala. 1994); Board of Zoning Adjustment of the City of Mobile v. DauphinUpham Joint Venture, 688 So.2d 823, 825 (Ala.Civ.App. 1996); Board ofAdjustment of the City of Gadsden v. VFW Post 8600, 511 So.2d 216, 217
(Ala.Civ.App. 1987); and F.H. Sanders v. Board of Adjustment of the Cityof Chickasaw, 445 So.2d 909, 912 (Ala.Civ.App. 1983). Exactly what constitutes an "unnecessary hardship" must be determined from the facts of the particular case. City of Mobile v. Sorrell, 271 Ala. 468, 470,124 So.2d 463, 465 (1960).
 "`"No one factor determines the question of what is practical difficulty or unnecessary hardship, but all relevant factors, when taken together, must indicate that the plight of the premises in question is unique in that they cannot be put reasonably to a conforming use because of the limitations imposed upon them by reason of their classification in a specified zone."'"
Ex parte Chapman, 485 So.2d at 1162 (quoting City of Mobile v. Sorrell,271 Ala. at 471 (quoting in turn Brackett v. Board of Appeal, 311 Mass. 52,39 N.E.2d 956 (1942)).
Summers first argues that the hardship entitling him to a variance was the significant amount of money he says he *Page 856 
expended in purchasing equipment to construct the mini-warehouses on his property. However, "`the unnecessary hardship which will suffice for the granting of a variance must relate to the land rather than to the owner himself. Mere personal hardship does not constitute sufficient ground for the granting of a variance.'" Ex parte Chapman, 485 So.2d at 1164
(quoting 82 Am. Jur.2d Zoning and Planning § 275 (1976)). Further, a "`self-inflicted or self-created hardship may not be the basis for a; 69 variance or for a claim thereof.'" Ex parte Chapman, 485 So.2d at 1163
(quoting Thompson, Weinman Co. v. Board of Adjustments, 275 Ala. 278,281, 154 So.2d 36, 39 (1963)). When the owner, by his own conduct, creates the exact hardship he alleges exists, he will not be permitted to take advantage of it. Id. Therefore, the fact that Summers had expended a significant amount of money to purchase equipment in anticipation of the construction of the mini-warehouse facility was an insufficient basis on which to grant an area variance.
Summers also argues that the existence of a junkyard adjacent to his property created an unnecessary hardship that warranted issuance of the variance. This Court has stated that "`[a]n unnecessary hardship' sufficient to support a variance exists where a zoning ordinance, when applied to the property in the setting of its environment, is `so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private property.'" Ex parte Chapman,485 So.2d at 1162. Summers testified that he did not know of any reason his property could not be used for one of the approximately 20 permitted uses under the B-2 zoning classification. Although Summers argues that one of the City officials testifying at trial stated that the property would probably not be suited for several of the permitted uses because the property was adjacent to a junkyard, it is undisputed that Summers's property had been used as rental property, a permitted use, for 15 years before the time he sought the variance. Based upon the record before us, we cannot say that the Board's refusal to grant a variance was either arbitrary or capricious. Therefore, the trial court erred in submitting to the jury the issue whether a variance should be granted.
Finally, Summers argues that the topography of his property renders the cost of developing the property for any of the conforming uses unfeasible, unreasonable, and uneconomical; thus, he argues, the topography creates an unnecessary hardship that would justify the issuance of the variance. Although Summers's counsel suggested at trial that Summers's property is 30 feet above the level of the road upon which it is situated and that the geological formation is solid rock, the record does not contain substantial evidence that either of these factors renders the property unfit for one of the permitted uses. To the contrary, as we have noted, Summers himself testified that he knew of no reason the property could not be used for several of the approximately 20 permitted uses.
"[T]he reasons for granting a variance must be `substantial, serious, and compelling.'" Ex parte Chapman, 485 So.2d at 1163 (quoting McQuillin, Municipal Corporations, § 25.167 (3d ed. 1983)). Because the reasons for granting a variance in this case do not meet this standard, we reverse the trial court's judgment and render a judgment in favor of the Board.
REVERSED AND JUDGMENT RENDERED. *Page 857 
Houston, See, Lyons, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
[1] Summers does not claim that when he allowed the rental house to be destroyed he was relying on assurances from the City that he would be allowed to construct the mini-storage facility.