Peter Ferraro and Cindy Ferraro appealed to the Jefferson Circuit Court a determination made by the Board of Zoning Adjustment of the City of Birmingham ("the Board of Zoning") that their next-door neighbor, Bobby Webster, was entitled to a variance for his property under Birmingham's zoning ordinance ("the zoning ordinance"). The circuit court held a trial de novo and also granted the variance. The Ferraros timely appealed to our supreme court, which transferred this case to this court on the basis that this court had appellate jurisdiction.
 Facts and Procedural Background
Webster bought the real property at issue in this case in the late 1980s. A *Page 301 
survey of the property performed in April 1987 indicated that a carport had existed on the property at that time. Although Webster testified that a carport did not exist on the property at the time he acquired the property, other evidence admitted at trial indicated that, in fact, the carport did exist at that time but that it was in disrepair. When asked by the trial judge what had happened to the initial carport, Webster stated that he thought "it had just rotted."
At some point following his purchase of the property, Webster built a new carport on the footprint of the old one. Between the carport and Webster's residence was a wooden deck, and on that deck was a hot tub. In approximately 1996 the Ferraros moved next door to Webster. In 2003 a fire that began on Webster's property destroyed Webster's carport and caused significant damage to the Ferraros' fence, house, and pecan tree. The cause of that fire had not been determined at the time of the trial, although the Ferraros contended that the fire began near Webster's hot tub.
The replacement of a legal nonconforming structure under the zoning ordinance requires the issuance of a variance by the Board of Zoning. When Webster began to rebuild his carport, the City of Birmingham informed him that he would need to obtain a variance because the carport was a legal nonconforming structure and rebuilding the carport was significant enough to be considered a replacement and not a repair. Webster subsequently sought a variance.
The only vehicular access to Webster's property is from the main road via a driveway adjacent to the eastern property line of Webster's property and next to the Ferraros' property. The only place a carport could be constructed on Webster's property was where Webster's driveway is located; that is, on the side of Webster's lot that was adjacent to the Ferraros' property. Without a variance, the only place Webster would be allowed to construct a carport would be in the rear of his lot and set back at least three feet from his property line. In the opinion of Tom McGhee, an expert that testified for the Board of Zoning, the portion of Webster's property located behind Webster's house was only about 15 feet deep and the portion of Webster's property on the side farthest from the Ferraros' property was, at its narrowest, only approximately 4.6 feet wide. Additionally, unlike most of his neighbors, Webster did not have access to the rear of his lot by means of an alleyway.
The Board of Zoning found that Webster had an unnecessary hardship and approved Webster's request for a variance to build a carport up to his eastern property line adjacent to the Ferraros' property. From that decision the Ferraros appealed to circuit court. During the pendency of the Ferraros' appeal to the circuit court, Webster rebuilt the deck and the carport. The new carport was deeper than the old carport had been, and it also covered the deck where the hot tub had been located. Additionally, the new carport had been built without a setback from the property line between Webster's and the Ferraros' property.
At trial Webster testified that he had built the carport to help provide shelter from the weather for himself and his mother, who, at the time of the trial, lived in a nursing home but visited Webster occasionally. However, McGhee testified that his opinion that the variance had been needed to alleviate an unnecessary hardship was not based on the statements of Webster. Rather, McGhee stated, several factors had been considered, including the facts that Webster's and the Ferraros' lots were extremely small and close together; *Page 302 
that on no other place on Webster's property could a carport be built; and that at one time a carport had existed on Webster's property before Webster had purchased it. McGhee opined that each of the elements necessary for the granting of a variance under the zoning ordinance had been met in this situation. McGhee also testified that the carport had been a legal nonconforming structure before it had burned down; in other words, the carport had been a nonconforming structure under the zoning ordinance, but it was legal because its existence predated the zoning ordinance.
In its judgment, the trial court stated, in relevant part:
 "The court has applied the legal standards to the largely undisputed facts and concludes that the [Board of Zoning] and the applicant, Bobby Webster, have carried their burden of reasonably satisfying the court that strict enforcement of the provisions of the zoning ordinance would work an `unnecessary hardship' on Webster's property. Without the sought variance there can be no carport on this lot for the protection of this owner as well as future owners of the property because of the lot's unique size and shape.
 ". . . .
 "It is Ordered and Adjudged that the petition of Bobby Webster is Granted for a variance to allow the reconstruction of a nonconforming accessory structure (carport) being located in a side yard instead of a rear yard and having a zero side yard setback instead of the three feet required; variance of Article VI, Section 7.3, pursuant to Article VIII, Section 5.2."
The Ferraros timely appealed to our supreme court, which transferred this case to this court.
 Discussion
Under § 11-52-81, Ala. Code 1975, any "party aggrieved" by the judgment of the Board of Zoning has standing to appeal that decision to the circuit court. To establish himself or herself as a "party aggrieved," a party must present proof of the adverse effect the changed status of the property has, or could have, on the use, enjoyment, and value of his or her own property. Crowder v. Zoning Bd. of Adjustment,406 So.2d 917, 918 (Ala.Civ.App. 1981); and Cox v. Poer, 45 Ala.App. 295, 229 So.2d 797 (1969). The Board of Zoning does not contest that the Ferraros have standing to appeal its decision; moreover, the close proximity of the Ferraros' property to Webster's property indicates that the variance Webster sought could affect the "use, enjoyment, and value" of the Ferraros' property.
This court has stated the standard of review for appeals from judgments affirming a zone variance as follows:
 "Generally, where the trial court receives ore tenus evidence, the trial court's judgment based on that evidence is entitled to a presumption of correctness and will not be reversed on appeal absent a showing that it is plainly and palpably wrong. Alverson v. Trans-Cycle Indus., Inc., 726 So.2d 670
(Ala.Civ.App. 1998). However, that presumption of correctness applies to the trial court's findings of fact, not to its conclusions of law. City of Russellville Zoning Bd. of Adjustment v. Vernon, 842 So.2d 627 (Ala. 2002). Further, the presumption favoring the judgment of the trial court has no application when the trial court is shown to have improperly applied the law to the facts. Ex parte Board of Zoning Adjustment of Mobile, 636 So.2d 415 (Ala. 1994)."
Town of Orrville v. S H Mobile Homes, Inc.,872 So.2d 856, 858 (Ala.Civ.App. 2003). *Page 303 
On appeal the Ferraros present four separate arguments for our consideration: (1) that Webster failed to prove an unnecessary hardship that related to his property and would otherwise authorize a variance from the zoning ordinance; (2) that Webster failed to prove an unnecessary hardship that was unique to the property and that rendered the property unfit for a conforming use; (3) that the circuit court impermissibly considered evidence beyond that which was considered by the Board of Zoning; and (4) that Webster failed to prove that all of the necessary elements under Birmingham's zoning ordinance were met to authorize a variance.
In Alabama, like many other states, cities, and other municipal corporations do not have the inherent power to enact and enforce zoning regulations. Swann v. Board of ZoningAdjustment of Jefferson County, 459 So.2d 896, 898
(Ala.Civ.App. 1984). Municipal corporations in Alabama do have the power to enact comprehensive zoning ordinances under enabling acts passed by our legislature, but any "zoning ordinances which are enacted under this delegated legislative authority must be enacted pursuant to, and in substantial conformity with, the enabling act." Id. (citing LynnwoodProp. Owners v. Lands Described in Complaint,359 So.2d 357 (Ala. 1978)).
The relevant portions of the enabling act for the Board of Zoning provide:
 "The [Board of Zoning] shall have the following powers: . . . To authorize upon appeal in specific cases such variance from the terms of the zoning ordinance of the city as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done, provided, however, that no variance shall be granted under the provisions of this act to allow a structure or use in a district restricted against such structure or use, except as specifically provided for by the zoning ordinance."
Act No. 326, Ala. Acts 1969. The above excerpt from Act No. 326 makes it clear that an "unnecessary hardship" test applies to the variance request in this case.[1]
In City of Mobile v. Sorrell, 271 Ala. 468, 470,124 So.2d 463, 465 (1960), our supreme court stated that exactly what constitutes an unnecessary hardship must be determined from the facts of each particular case. Furthermore, theSorrell Court defined for the first time what an "unnecessary hardship" is by stating,
 "`[n]o one factor determines the question of what is practical difficulty or unnecessary hardship, but all relevant factors, when taken together, must indicate that the plight of the premises in question is unique in that they cannot be put reasonably to a conforming use because of the limitations imposed upon them by reason of their classification in a specified zone.'"
Sorrell, 271 Ala. at 471, 124 So.2d at 465 (quotingBrackett v. Board of Appeal, 311 Mass. 52, 60, 39 N.E.2d 956, 961 (1942)). This definition has been applied in numerous cases, including Priest v. Griffin,284 Ala. 97, 102, 222 So.2d 353, 357 (Ala. 1969), *Page 304 
in which the supreme court noted that a variance was not due to be granted when it did not appear "that the subject area is unfit for conforming use."
The problem with applying such a strict definition of "unnecessary hardship" to this case is that it makes little sense to require that the relevant property "cannot be put reasonably to a conforming use" or that it be "unfit for conforming use" when the variance requested did not seek to change the prescribed use of the property. Therefore, we take the opportunity presented by this case to discuss the previously unexplained difference between the granting of an "use variance" and the granting of an "area variance" in regard to the evidence required to show an "unnecessary hardship."
Use variances have been defined as permitting deviation from zoning requirements regarding the use of the property, whereas area variances have been defined as permitting deviation from zoning requirements regarding the construction and placement of structures on the property but not permitting deviation from the zoning requirements regarding the use of the property. Seegenerally Black's Law Dictionary 1588 (8th ed.2004); 3 Edward H. Ziegler, Jr., Rathkopf's The Law of Zoning Planning § 58:4 (2006); 101A C.J.S. Zoning Land Planning § 207 (2007).[2] This distinction is, for the most part, a judicially created distinction. 3 Kenneth H. Young, Anderson's American Law of Zoning § 20.06 (4th ed.1996) ("The distinction between `area' and `use' variances, and the imposition of separate requirements for the granting of each type, are inventions of the courts.").
As noted in Rathkopf's,
 "[i]t is easy to give examples of what constitutes use variances as opposed to nonuse variances [i.e., area variances or dimensional variances]. A variance to operate a bar in a residential zone is a clear use variance because to allow the variance will change the character of the neighborhood. On the other hand, a variance to allow a house to be built nine feet from the sideline of a lot rather than ten feet is a clear nonuse or area variance because to allow the variance will not change the character of the neighborhood."
3 Rathkopf's The Law of Zoning Planning, § 58:4. A thorough review of Alabama caselaw indicates that our courts have not yet addressed the distinction between a use variance and an area variance.
The definition of "unnecessary hardship" adopted by our supreme court in Sorrell, supra, was in the context of a use-variance dispute. Brackett, supra, the case from which the Sorrell definition was drawn, was also a case involving a use variance. Priest, supra, also involved a use variance. Only a handful of Alabama cases address what could be classified as an area variance, and although they note the Sorrell definition of "unnecessary hardship," they are all distinguishable from this case.
The most relevant case is Chapman v. Board of Adjustmentof Mobile, 485 So.2d 1161 (Ala. 1986). In Chapman
our supreme court addressed whether a variance should have been granted to allow a property owner to build a utility building closer to his property line when the zoning ordinance required a eight-foot setback from the property line. Although this was a request for an area variance, the supreme court reversed this court's affirmance of the trial court's judgment granting the *Page 305 
variance because (1) the hardship had been self-inflicted in that the property owner began construction of the utility building before obtaining a permit for its construction, (2) the property owner's work did nothing to improve the appearance of the property, (3) the utility building could readily be moved to another location on the property that would comply with the law, and (4) the trial court should not have considered the age and health of the property owner in deciding to grant the variance. Id. at 1163-64. Although the request for the variance in Chapman was for an area variance, our supreme court did not distinguish between area variances and use variances, and, in fact, it quotedSorrell, supra, to define "unnecessary hardship." Despite not distinguishing between area variances and use variances, the factors requiring reversal in Chapman
are not present in this case. In this case the hardship faced by Webster was not self-inflicted — he did not destroy the carport intentionally; the carport could improve the appearance of the property, certainly inasmuch as it replaced the destroyed carport; because of the shallowness and narrowness of the lot and the lack of access to the rear of the lot, the carport could only be built where the old carport had been located; and the age and health of Webster were not criteria used by the circuit court in deciding to grant the variance.
In another supreme court case, Board of Zoning Adjustmentfor Fultondale v. Summers, 814 So.2d 851 (Ala. 2001), the term "area variance" was used in the discussion of the case. However, because the property owner had actually sought a variance to construct a mini-storage facility on his property, which was a use not allowed under the applicable zoning ordinance, that case did not actually address an area-variance request.
A request for a variance from a setback requirement was addressed by this court in Martin v. Board of Adjustment ofEnterprise, 464 So.2d 123 (Ala.Civ.App. 1985). InMartin this court affirmed the denial of a request for a variance when the owners of the property at issue had been informed of a seven-foot setback requirement before they began construction of a carport that extended to the edge of their property. In other words, the hardship suffered by the property owners in Martin was self-inflicted. Furthermore, no other considerations regarding the shape of the property or its uniqueness in the neighborhood were addressed inMartin.
Other cases addressing area-variance requests have also been decided on a basis other than a strict reliance upon theSorrell definition of "unnecessary hardship." See,e.g., Asmus v. Ono Island Bd. of Adjustment,716 So.2d 1242 (Ala.Civ.App. 1998) (reversing a variance obtained by a property owner that would have allowed him to build a pier and a boathouse on his property when the pier would have extended 64 feet further than allowed under the zoning ordinance, and holding that the property owner did not meet the unnecessary-hardship test when the construction of the pier would interfere with neighbors' navigation of boats in the water, prohibit access by some neighbors to their piers in some low tides, the property at issue was not unique in that an underwater grassbed affected other property owners as well, and the property owner could build a 150-foot conforming pier);City of Trussville v. Simmons, 675 So.2d 474
(Ala.Civ.App. 1996) (reversing the grant of a variance to allow the construction of a billboard on commercial property when the property owner did not show that the enforcement of the sign ordinance would result in an unnecessary hardship because the only hardship he could point to was that he would lose greater income, *Page 306 
and any hardship was self-inflicted in that the property owner had been a member of the advisory committee that developed the sign ordinance and he did not object to having his permit application being considered under the new ordinance); Board of Adjustment of Gadsden v. VFW Post8600, 511 So.2d 216 (Ala.Civ.App. 1987) (holding that personal hardship to property owners who would be required to ascend a 40-foot ramp to a new addition on their property did not warrant a variance to allow construction of the new addition on the same level as an older building because the hardship was not an unnecessary hardship that ran with the land).
Therefore, it appears that the field is clear for interpretation of "unnecessary hardship" in the context of area variances. We note that,
 "[i]n most states, the courts will approve an area variance upon a lesser showing by the applicant than is required to sustain a use variance. The most concise rule has been developed by the New York courts, which require proof of practical difficulties rather than unnecessary hardship in support of an area variance."
3 Anderson American Law of Zoning § 20.48.[3] In Alabama, § 11-52-50 does not mention "practical difficulties." Additionally, the pertinent statute for the Board of Zoning, Act No. 326, does not reference practical difficulties, and we do not adopt a "practical difficulties" test for area variances. However, we note that "[t]he courts of a number of states, without formally adopting the practical difficulties standard, appear to apply a less rigorous standard where area variances are involved." Id., § 20.51.
For example, in Boccia v. City of Portsmouth, 151 N.H. 85, 91-92, 855 A.2d 516, 522 (2004), the supreme court of New Hampshire refused adopt a "practical difficulties" test to apply to area-variance requests because it was constrained by state statutes to apply an unnecessary-hardship test to both area-variance and use-variance requests. However, the court went on to state that, because "distinguishing between use and area variances will greatly assist zoning authorities and courts in determining whether the unnecessary hardship standard is met," it would apply separate tests for unnecessary hardship depending on whether a request was for an area-variance or a use variance. Id.
In another similar case, Hertzberg v. Zoning Board ofAdjustment of Pittsburgh, 554 Pa. 249, 257-259,721 A.2d 43, 47-48 (1998), the supreme court of Pennsylvania stated:
 "The issue here involves a dimensional variance [i.e., an area variance] and not a use variance — an important distinction ignored by the Commonwealth Court. When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations. Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation. *Page 307 
 ". . . .
 ". . . We find that the instant matter is an appropriate case to make a formal declaration that the quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought."
Other states have noted a similar distinction. SeeMatthew v. Smith, 707 S.W.2d 411 (Mo. 1986) (to obtain a use variance an applicant must demonstrate an unnecessary hardship, but to obtain an area variance an applicant must establish the existence of conditions slightly less rigorous than unnecessary hardship); see also Palmer v.Board of Zoning Adjustment, 287 A.2d 535, 541
(D.C. 1972) (court held that it would apply a practical-difficulties test to area variances and noted that an area variance does not alter the character of the zoned district and that "a more stringent showing is warranted with respect to the more drastic relief inherent in a use variance").
We therefore conclude that a party seeking an area variance need not show that the property "cannot be put reasonably to a conforming use" or that it is "unfit for conforming use" in order obtain the variance. We do not mean to indicate that a request for an area variance does not require a showing of "unnecessary hardship," but in light of the statutory requirement in Act No. 326 that "substantial justice [be] done," we simply note that the burden of proof required to show an unnecessary hardship should be commensurate with the scope of the requested variance. Thus, we hold that all the principles related to the evidence necessary to show "unnecessary hardship" in the context of use variances apply in the context of area variances, with the exception that the requirement that the property must be shown to be incapable of being put to a conforming use or unfit for a conforming use is not required.
Turning now to the arguments raised in the Ferraros' appeal, we note that the primary question in variance cases is whether, due to special conditions, a literal enforcement of a zoning ordinance will result in an unnecessary hardship. Board ofZoning Adjustment for Fultondale v. Summers,814 So.2d at 855. "An `unnecessary hardship' sufficient to support a variance exists where a zoning ordinance, when applied to the property in the setting of its environment, is `so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private property.'" Ex parteChapman, 485 So.2d 1161, 1162 (Ala. 1986) (quoting McQuillin, Municipal Corporations § 25.167 (3d ed.1983)). Furthermore, "`the unnecessary hardship which will suffice for the granting of a variance must relate to the land rather than to the owner himself. Mere personal hardship does not constitute sufficient ground for the granting of a variance.'" Ex parte Chapman, 485 So.2d at 1164
(quoting 82 Am.Jur.2d, Zoning Planning § 275 (1976)). Finally, a "`self-inflicted or self-created hardship may not be the basis for a variance or for a claim thereof.'"Ex parte Chapman, 485 So.2d at 1163 (quotingThompson, Weinman Co. v. Board of Adjustment,275 Ala. 278, 281, 154 So.2d 36, 39 (1963)).
The Ferraros' first argument focuses on Webster's testimony, specifically his statements that he had wanted to rebuild the carport so that he or his mother could enter and leave his house without being exposed to the weather. In furthering their argument, the Ferraros claim the facts in this case are strongly analogous to those presented in Board of ZoningAdjustment for Fultondale v. Summers, supra. However, as noted above, Summers, involved a request for a use variance. *Page 308 
More specifically, in Summers, Robert B. Summers, the owner of a parcel of land in the City of Fultondale, sought to construct a mini-storage facility on that property although it had not been zoned for that use. To do so Summers sought first an exception and then a variance to the zoning ordinance. The supreme court reversed the trial court's judgment in favor of Summers, noting that Summers's own conduct in destroying his rental residence on the property in contemplation of building the mini-storage facility could not be considered an unnecessary hardship warranting a variance. Summers,814 So.2d at 856. The supreme court also stated that evidence had been presented indicating that Summers could put the property to 1 of approximately 20 permitted uses under the existing zoning classification for the property and that, therefore, the zoning ordinance, as it applied to Summers's property, would not constitute an "`"arbitrary and capricious interference with the basic right of private property."'"Id. (quoting Ex parte Chapman,485 So.2d at 1162). Finally, the court noted that there had not been substantial evidence presented to indicate that the topography of the property rendered the development of the property for any of the conforming uses "unfeasible, unreasonable, and uneconomical." Summers, 814 So.2d at 856.
Summers is inapposite to the facts of this case. The Board of Zoning does not assert that Webster's personal preference or a financial loss was the basis for its decision to grant the variance. Rather, the Board of Zoning argues that the variance was granted based upon several facts: (1) Webster's property is significantly smaller than other parcels in the neighborhood, (2) Webster's property does not have an alley access in the rear like many of the neighboring properties, (3) Webster's property is narrow and has only enough space on one side of the residence for a carport, and (4) a survey of the property performed in 1987 indicated that the carport had been in existence at that time. Importantly, in the present case, Webster did not cause the hardship that he faced; it was not shown that he intentionally burned down his previous carport.
Although the Ferraros argue, citing Board of Adjustmentof Gadsden v. VFW Post 8600, supra, that Webster's personal preference for additional convenience is not a basis for granting the variance, the Board of Zoning does not assert that it based its decision upon Webster's stated preference; rather, it based its decision upon the size of the lot and the other facts set out above. The Ferraros also point out that a party seeking a variance "must demonstrate that as a result of enforcement of the zoning ordinance, his property will suffer unique or peculiar hardships not common to other property in the same zoning district." Brock v. Board of ZoningAdjustment of Huntsville, 571 So.2d 1183, 1184
(Ala.Civ.App. 1990) (citing Ex parte Chapman,485 So.2d 1161). That statement of the law is correct, but the testimony at trial indicated that most of Webster's neighbors could easily comply with the zoning ordinance by putting carports in the rear of their lots because they had rear access to their lots.
The Ferraros' second argument is a variation of their first argument, but it focuses upon the assertion that Webster failed to prove that any unnecessary hardship was unique to the property and rendered the property unfit for a conforming use. The Ferraros note that Webster's property had been capable of being put to a conforming use as his residence without the variance; however, as noted above, Webster did not need to show that his property was incapable of being put to a conforming use because he did not request to change the prescribed use of the property. *Page 309 
Additionally, the case relied upon by the Ferraros for this point, Summers, supra, is distinguishable in that the party seeking the variance in that case relied primarily upon his self-inflicted financial hardship and did not present substantial evidence that the topography of his land warranted a variance to avoid an unnecessary hardship. In this case Webster did not assert that his financial hardship was the basis for his desire for the variance. Additionally, the evidence at trial indicated that the granting of the variance had been related to the shape of the property and the property rights of Webster. Webster had a carport previously, it had burned down, and strict compliance with the zoning ordinance called for Webster's carport to be built in the rear of his lot. However, the shape of and the limited access to Webster's property restrict the location of a carport on Webster's property to the portion of the lot nearest the Ferraros' property. Therefore, this argument is also unavailing.
The Ferraros' third argument cites Lawless v. Smith,481 So.2d 1144 (Ala.Civ.App. 1985), for the proposition that the circuit court impermissibly considered evidence beyond that which had been presented to the Board of Zoning. However, the Ferraros did not object to the admission of such evidence when it was presented. The failure to object to the admission of evidence waives that argument on appeal. See Davis v.Southland Corp., 465 So.2d 397 (Ala. 1985) (a party seeking to prevent the admission of evidence must object to the offering of that evidence; failure to make an objection at trial waives that objection). Furthermore, Lawless
also indicates that although the scope of the trial in circuit court is limited to the trial of the issues presented to the Board of Zoning, new evidence regarding those issues or may still be presented. Lawless, 481 So.2d at 1147.
The Ferraros' fourth and final argument is that Webster failed to present evidence to meet all the requirements for a variance under the zoning ordinance. The relevant portions of the zoning ordinance provide:
 "The Board [of Zoning] in appropriate cases and subject to appropriate conditions and safeguards, shall have the following powers:
 ". . . .
 "2. To authorize in specific cases a variance from the terms of this Ordinance such as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the Ordinance will result in unnecessary hardship, but where the spirit of the Ordinance shall be observed and substantial justice done. Such special conditions shall be limited to exceptional narrowness, shallowness or shape of a specific piece of property existing at the time of the enactment of this Ordinance, or exceptional topographic conditions or other extraordinary and exceptional situations or conditions of such piece of property as would result in peculiar, extraordinary and practical difficulties. However, the granting of the variance shall not allow a structure or use in a district restricted against such structure or use, except as specifically provided for in this Article. No variance shall be authorized unless the Board [of Zoning] finds all of the following conditions exist:
 "a. That the special circumstances or conditions applying to the building or land in question are peculiar to such premises and do *Page 310 
not apply generally to other land or buildings in the vicinity.
 "b. That the granting of the application is necessary for the preservation and enjoyment of a property right and not merely to serve as a convenience to the applicant.
 "c. That the condition from which relief for a variance is sought did not result from action by the applicant.
 "d. That the authorizing of the variance will not impair an adequate supply of light and air to adjacent property or unreasonably increase the congestion in public streets, or increase the danger of fire, or imperil the public safety, or unreasonably diminish or impair established property values within the surrounding areas, or in any other respect impair the health, safety, comfort, morals, or general welfare of the inhabitants of the City of Birmingham."
At trial Tom McGhee, an expert witness and the chief planner for the City of Birmingham, testified that in his opinion each of the requirements for a variance under the zoning ordinance had been met in this case. Furthermore, he testified that the previous carport had been a legal nonconforming structure. We agree that Webster's property meets the requirements for a variance under the zoning ordinance. Forcing compliance with the zoning ordinance when the property has "exceptional narrowness [and] shallowness" would result in "peculiar, extraordinary and practical difficulties" and an "unnecessary hardship." The special circumstances applying to Webster's property do not apply generally to the other properties in the vicinity because, even though other properties may be narrow, most are not shallow and they have rear access via an alleyway. The granting of the variance preserves Webster's property right to a carport that had existed legally in the past. Generally, nonconforming uses of property are "grandfathered" under zoning ordinances and not lost unless the owner abandons that use.See zoning ordinance, § 1 on Nonconforming Uses (stating that "[t]he lawful use of a structure or the lawful use of land existing at the time of the effective date of this Ordinance may be continued although such use does not conform to the provisions hereof); see also Sorrell,271 Ala. 468, 124 So.2d 463 (determining that a variance had been warranted when, among other factors, the property at issue had been acquired by its owner before it had become subject to a zoning ordinance).
The condition for which the variance had been sought had not been caused by any action of Webster; he was never alleged to have intentionally caused the fire, or even to have negligently done so. Although Webster's previous carport burned down and although the fire caused damage to the Ferraros' property, a house and carport are not inherently dangerous. Indeed, this lack of inherent danger is reflected in the makeup of the neighborhood, in which many of the houses are built more closely together than Webster's and the Ferraros' houses are. Furthermore, McGhee's testimony indicated that the authorization of the variance would not impair the supply of light and air, increase congestion, or unreasonably diminish or impair established property values, or in any other way impair the "health, safety, comfort, morals, or general welfare of the inhabitants of the City of Birmingham." In short, the Ferraros' fourth argument also fails.
 Conclusion
Although the nuances of the unnecessary-hardship test in regard to area-variance *Page 311 
requests may require further elaboration in subsequent cases, we hold that area variances are distinct from use variances and that the unnecessary-hardship test operates slightly differently depending upon whether it is applied to an area-variance or a use-variance request. An applicant for an area variance is not required to show that his property cannot be put to a conforming use in order to obtain the variance. Webster's hardship was not self-inflicted. Furthermore, the unique size and shape of Webster's property renders a carport incapable of being built on his premises without a variance. We hold that, considering all the relevant factors taken together, the strict application of the zoning ordinance would result in an unnecessary hardship to Webster. Therefore, we affirm the judgment of the circuit court.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, J., concur.
BRYAN and MOORE, JJ., concur in the result, without writing.
[1] Section 11-52-80, Ala. Code 1975, which generally provides for the appointment of a board of adjustment by an incorporated city or town and which sets out the responsibilities of a board of adjustment contains an "unnecessary hardship" test analogous to the one in Act No. 326. Thus, cases interpreting the "unnecessary hardship" test of § 11-52-50 and its predecessors are instructive to our analysis of the "unnecessary hardship" test in Act No. 326.
[2] Area variances are also sometimes called nonuse variances or dimensional variances. See 3 Rathkopf's The Lawof Zoning Planning § 58:4; and 83 Am.Jur.2dZoning Planning § 757 (2003).
[3] In 1992, the New York legislature amended the applicable statute to replace the "practical difficulties" test with a balancing test, "which requires the board to weigh `the benefit to the applicant' against `the detriment to the health, safety and welfare of the neighborhood or community.'" 3Rathkopff's The Law of Zoning Planning § 58:15. Thus, the test for an area-variance request in New York is still distinct from the test applied for a use-variance request. *Page 755