DONALDSON, Judge.
Ann Brown appeals from a judgment entered by the Madison Circuit Court (“trial court”) granting a variance that allows a reduction in the number of required *1215 parking spaces for Brown’s business, Ann’s Studio of Dance (“the dance studio”), subject to conditions imposed by the trial court. We affirm.

Facts and Procedural History

For 44 years, Brown has operated the dance studio to educate students in dance and gymnastics. The dance studio currently consists of two buildings situated on two lots on Whitesburg Drive in Huntsville. Although the two lots on which the dance studio is situated are zoned for commercial use, the dance studio is located in Gwyn Home Sites, a .residential subdivision. Since September 2010, Joseph P. Jefferson has owned a house located directly across from the entrance to the parking lot of the dance studio.
In 2005, Brown planned a major renovation of her property that involved renovating an existing building containing two studios, tearing down an old house on the property, and replacing the old house with a three-story building containing a new studio. Brown intended to provide elite dance instruction in the new studio, which would contain a specialized floor and. a 20-foot ceiling. The plans to renovate the property required approval from the City of Huntsville. .Brown retained an architect, Eric Milberger (“the architect”), to plan and design the renovation. At a meeting with the Board of Adjustment of the City of Huntsville (“the board”), the architect detailed a plan to address the traffic issues associated with the transportation of students to and from classes at the dance studio. The plan was to alleviate the overflow of vehicles into the public streets by allowing drivers to form. two lines of vehicles through the dance studio’s parking lot when dropping off and picking up students. As . part of this plan, directional signs would be posted and parking spaces would be arranged to enable cars to form this double queue. As the trial court described in its judgment:
“[Brown] hired an architect who prepared building and site plans which were submitted to the City of Huntsville for approval. However, those plans misrepresented the square footage of the buildings to be renovated and constructed on the property, as well as misrepresenting the number of parking spaces which would service the constructed/renovated property. The plan submitted by her architect to the City of Huntsville for approval actually misrepresented that there would be more parking spaces on the property after renovation ■ than would, be required by the zoning ordinances of the City of Huntsville in effect at that time. As a result of that misrepresentation, a. variance for parking was not deemed necessary, nor was a parking variance requested at that time. There were variances that were needed, requested, and approved for the front setback and landscaping for the renovated building.”
Under the provisions of the Huntsville Zoning Ordinance in effect in 2005 (“the ordinance”), the dance studio’s parking lot was required to have at least 24 parking spaces. The parking lot, as designed by the architect, however, has contained only 16-18 parking spaces since the renovations and construction were completed.
The record indicates that since 2005 residents of the property surrounding the dance studio have complained about traffic congestion as a result of the cars lining up at the dance studio. Jefferson’s discovery of the discrepancy between the number of parking spaces required by the ordinance and. the actual, number of spaces being provided by Brown led to the underlying legal proceedings between Jefferson and Brown, as described by the trial court in its final judgment:
*1216 “A complaint was lodged with the City of Huntsville in 2012, and the Zoning Board for the City of Huntsville issued a notice to Ann Brown that she was. in violation of the zoning ordinances of the City of -Huntsville, with the violation being that she needed 24 parking spaces to service her property. Thereafter, she requested a variance, which was denied. She then appealed to the Board of Adjustment for the City of Huntsville, seeking a reduction in the required number of parking spaces for her property to 18, which was granted, subject to a condition that the employees of the business park ‘off-site.’ ”
Jefferson appealed the board’s decision to the trial court, pursuant to § 11-52-81, Ala.Code 1975.
Jefferson and another individual also filed a separate action against Brown and other defendants. In that separate action, Jefferson claimed damage resulting from the traffic issues and sought compensation from Brown. The trial court declined to consolidate the two cases, and the separate action remained pending throughout the duration of the underlying proceedings. This appeal addresses only the trial court’s judgment relating to Brown’s request for a variance.
The trial court conducted a final hearing on the merits on December 3, 2012. During the course of the hearing, both parties presented evidence regarding the public’s interests in the issue presented by the case. For example, Brown and her daughter, who is a teacher at the dance studio, provided testimony regarding contributions to the community the dance studio has made. Jefferson presented evidence and testimony showing that the cars lining up at the dance studio to pick up and drop off students creates traffic congestion. The trial court described the traffic situation as follows:
“Even though [Brown’s] business has fewer students now than it did in 2005, it still has 582 students at present, most of whom are under driving age, and must be dropped off and picked up for classes at Ann’s School of Dance, which begin after school at approximately 3:30 p.m., and end at approximately 9:00 p.m. on week nights during the school year. When her ‘patrons,’ as Ann Brown referred to them in her testimony, come to pick up the dance students, they do not come in and park in the parking spaces provided on her lot; but instead, they enter, as required by Ann Brown, through the driveway located on Center Avenue, line up in rows of two, side-by-side, pick up their students, and exit one vehicle at a time through a more narrow exit onto Whitesburg Drive, which is a heavily traveled road, through a ‘funneling’ procedure. Some patrons are allowed to even turn left onto Whitesburg Drive as they exit the Ann’s School of Dance property, even though it is illegal to do so.
“Numerous patrons picking up dance students line up in their vehicles along Alabama Street and Center Avenue, waiting to enter the Ann’s School of Dance entrance on Center Avenue, creating an extremely congested traffic situation and a dangerous and unsafe condition, not only for those patrons, but for any other citizens who travel on Alabama Street and Center Avenue during that period of time. In addition, the owners of homes in that subdivision, known as Gwyn Home Sites, are often denied access to their own driveways, and the opportunity to even park on the street in front of their homes, as a result of the severe traffic congestion created by the patrons waiting to pick up the students from Ann’s School of Dance. Even though Ann Brown staggers some *1217 what the starting and. ending times for her classes, the traffic congestion is so bad that it denies the owners and occupants of homes in that area, including the Plaintiff, Joseph P. Jefferson, the quiet enjoyment of their own homes to which they are entitled. It does not appear from the evidence that the enforcement of the applicable traffic laws by the City of Huntsville has had any significant impact on the traffic congestion caused by the patrons of Ann’s School of Dance. Marie Bostick, an official for the City of Huntsville, testified that her department had been receiving complaints about the traffic congestion for over five years. In addition, concerns have been expressed that the resulting traffic congestion prohibits the use of Alabama Street and Center Avenue for emergency vehicles, such as fire trucks and ambulances, if access to that area were to be needed in an emergency situation.”
In its judgment, the trial court found that Brown had an unnecessary hardship that was not self-created because the City of Huntsville and Brown both had relied on the expertise and representations made by the architect of the 2005 renovations. The trial court granted a variance to reduce the number of required parking spaces from 24 to 18 in the dance studio’s parking lot. However, the variance was made subject to several conditions, including:
“(b) The Defendant, Ann Brown, must provide and utilize an appropriate shuttle service for the transportation of the students to and from the Ann’s School of Dance property, with the meeting place for pick up and return of the students to be at a site which is located outside of Gwyn Home Sites Subdivision. This shuttle service shall be the exclusive method for students of Ann’s School of Dance to be brought to and taken from Ann’s School of Dance for the classes they are to attend on the subject property; and,
“(c) Otherwise, all other persons who enter the subject property in a motor vehicle, including employees, staff, vendors, parents and others, shall be required to enter into and park in one of the 18 lawful parking spaces herein allowed on the subject property, and shall not be allowed to park their vehicle, other than in one of the lawful parking spaces herein allowed;
“(d) Appropriate signage shall be prepared and installed at the Whitesburg Drive exit on the subject property which requires and allows only a right turn out of the subject property onto Whitesburg Drive.”
(Emphasis in original.) The trial court added:
‘While this Court understands and appreciates that the specific conditions set out above will cause the Defendant, Ann Brown, to incur additional operating expenses for her business, and will no doubt cause some inconvenience for the patrons of that business, the specific conditions set out above are deemed by this Court to be necessary to balance the granting of the requested variance with the interests and rights of the owners and occupants of the homes in that adjoining residential area; and are deemed by this Court to be necessary for the spirit of the zoning ordinance to be observed and substantial justice done.”
Brown filed a motion to alter or amend the- judgment, and on February 4, 2013, the trial court entered a supplemental order denying Brown’s motion except to add the following clarification:
“The granting of the requested variance, subject to the specific conditions set out above, shall run with the subject *1218 property, without regard to the ownership of the subject property, or the business or businesses operated in it. This court was not requested to grant injunc-tive relief, nor did this court intend any of its orders to .constitute injunctive relief. For the reasons set out in this Order, without the specific conditions set out above being a legally valid part of this court’s order, this court would have denied the requested variance. ‘The grant of a variance runs with the land and is not a personal license given to the landowner. Accordingly, the unnecessary hardship which will suffice for the granting of a variance must relate to the land rather than to the owner himself. Mere personal hardship does not constitute sufficient ground for the granting of a variance.’ Ex parte Chapman, 485 So.2d 1161, 1164 (Ala.1986) (quoting 82 Am.Jur.2d Zoning and Planning § 275 (1976)).”
Brown timely filed an appeal to this court on February 20, 2013. On appeal, Brown contends that Jefferson lacked standing as an aggrieved party, that the trial court lacked the authority to impose the conditions to the variance, and that the trial court impermissibly entered an injunction. Jefferson did not file a brief on appeal, and the City of Huntsville declined to participate in the appeal.

Standard of Review

“ ‘[The] standard of review for appeals from' judgments affirming a zone variance [is] as follows:
“‘Generally, where the trial court receives ore tenus evidence, the trial court’s judgment based on that evidence is entitled to a presumption of correctness and will not be reversed on appeal absent a showing that it is plainly and palpably wrong. Alverson v. Trans-Cycle Indus., Inc., 726 So.2d 670 (Ala.Civ.App.1998). However, that presumption of correctness applies to the trial court’s findings of fact, not to its conclusions of law. City of Russellville Zoning Bd. of Adjustment v. Vernon, 842 So.2d 627 (Ala.2002). Further, the presumption favoring the judgment of the trial court has no application when the trial court is shown to have improperly applied the law to the facts. Ex parte Board of Zoning Adjustment of Mobile, 636 So.2d 415 (Ala.1994).’ ”
Ferraro v. Board of Zoning Adjustment of Birmingham, 970 So.2d 299, 302 (Ala.Civ.App.2007) (quoting Town of Orrville v. S & H Mobile Homes, Inc., 872 So.2d 856, 858 (Ala.Civ.App.2003)).

Discussion

 Brown raises the threshold issue of whether Jefferson had standing as an aggrieved party to appeal the board’s decision to the trial court. Jefferson appealed the board’s decision pursuant to § 11-52-81, Ala.Code 1975. That statute provides, in pertinent part, that “[a]ny party aggrieved by any final judgment or decision of such board of zoning adjustment may ... appeal therefrom to the circuit court.” Id.
“Under § 11-52-81, Ala.Code 1975, any ‘party aggrieved’ by thé judgment of the Board of Zoning has standing to appeal that decision to the circuit court. To establish himself or herself as a ‘party aggrieved,’ a party must present proof of the adverse effect the changed status of the property has, or could have, on the use, enjoyment, and value of his or her own property.”
Ferraro, 970 So.2d at 302 (citing Crowder v. Zoning Bd. of Adjustment of Birmingham, 406 So.2d 917, 918 (Ala.Civ.App.1981); and Cox v. Poer, 45 Ala.App. 295, 229 So.2d 797 (1969)).
*1219 Jefferson presented ample evidence indicating that the cars waiting to pick up or drop off students at the dance studio caused traffic congestion in the neighborhood. As an adjoining neighbor to the dance studio, Jefferson experienced at times blocked access in and out of his driveway, and on occasion he has had to drive around intersections blocked by the waiting cars. Testimony indicated that the overflow of cars from the dance studio was a result of the lack of parking spaces at the dance studio.
At the time of the board’s decision in 2012, the dance studio’s parking lot lacked the number of spaces required by the zoning ordinance. In granting a variance, the board allowed the dance studio to maintain a reduced number of parking spaces. We conclude that Jefferson presented sufficient evidence indicating that the subject matter of the variance has adversely affected the use and enjoyment of his property. Brown contends that, although Jefferson experienced the effects of traffic congestion, Jefferson did not show that the granting of the variance had an adverse effect on him. Brown argues that because the reduced number of parking spaces has been present since 2005, the granting of the variance in 2012 could not have resulted in the adverse effects Jefferson complains of now. Brown also argues that because Jefferson alleged that the dance studio had only 16 or 17 parking spaces before the variance, the granting of the variance benefits rather than adversely affects Jefferson by requiring the dance studio to have at least 18 parking spaces.
However, the adverse effect experienced by Jefferson is more than the traffic congestion resulting from the number of parking spaces currently available at the dance studio. The board’s decision impinged on Jefferson’s property rights by removing the protection against traffic congestion provided by the ordinance. The preamble of the ordinance provides that the City of Huntsville’s zoning regulations, including the parking-space regulation, were designed “in accordance with- a comprehensive plan and design to lessen congestion in the streets.” After the board decided to grant a variance to the dance studio, the ordinance no longer afforded Jefferson protection against traffic congestion due to the dance studio’s nonconformity with the parking-space regulation. This loss of protection occurred with the granting of the variance and not before, and it certainly was detrimental to Jefferson. Jefferson’s experience with the traffic congestion shows that the adverse effeet was specific and personal to him.
“[T]o qualify as a person aggrieved by an administrative decision it is necessary ⅛ demonstrate that the decision in issue ■vrill have a singular impact upon some legally protectable interest of the plaintiff.” 4 Kenneth H. Young, Anderson’s American Law of Zoning § 27:10 (4th ed.1996). As an adjoining neighbor directly affected by the traffic congestion from the dance studio, Jefferson had a specific and personal stake in the outcome of the board’s' decision. The board’s decision had an adverse effect on his legal interest in the use, enjoyment, and value of his property. We, therefore, affirm the trial court’s determination that Jefferson is an aggrieved party with the right to appeal the board’s decision under § 11-52-81.
We next turn to Brown’s contention that the trial court erred in attaching conditions to the variance requiring the dance studio to use a shuttle service for the transportation of students. On appeal to the circuit court, such a matter is tried de novo. § 11-52-81. “The appeal itself is considered an ‘administrative remedy’ in that the trial court may hear only those issues that were properly raised before a *1220 board of adjustment and that are included in the transcript of the proceedings.” ' Ex parte Lake Forest Prop. Owners’ Ass’n, 603 So.2d 1045, 1046 (Ala.1992) (citing City of Homewood v. Caffee, 400 So.2d 375 (Ala.1981)). “The authority of the .circuit court on appeal to permit a variance from the terms of the ordinance is the same as that conferred on the board of adjustment.” Swann v. Board of Zoning Adjustment of Jefferson Cnty., 459 So.2d 896, 899 (Ala.Civ.App.1984) (citing Nelson v. Donaldson, 255 Ala. 76, 50 So.2d 244 (1951)). Therefore, although the trial court was not bound by the ruling of the board, the trial court could not enter a ruling on Brown’s application for a variance beyond that which the board was authorized to make.
Unless prohibited by applicable law, attaching conditions is a well recognized inherent power of governmental bodies when granting variances from zoning requirements. 101A C.J.S. Zoning and Land Planning § 307 (2005) (“A zoning board may grant a variance or exception on stated conditions, provided the prerequisites for a variance have been satisfied,” (footnotes omitted)); C.R. McCorkle, Annotation, Construction and Application of Provisions for Variations in Application of Zoning Regulations and Special Exceptions Thereto, 168 A.L.R. 13, 60 (1947) (Originally published in 1947) (“It is generally held that a zoning board, in granting a variance or exception, may impose reasonable conditions.”); 83 Am.Jur.2d Zoning and Planning § 788 (2013) (“The power to impose conditions is one which is implicit in the power to grant a variance.” (footnote omitted)). Our supreme court has stated that “[a] variance could be granted by the Board of Zoning Adjustment, subject to such conditions as the Board required to preserve and protect the character of the area and otherwise promote the purpose of the zoning ordinance.” Alabama Power Co. v. BrewtonBd. of Zoning Adjustment, 339 So.2d 1025, 1026 (Ala.1976) (denial of variance affirmed on other grounds). In addition, our supreme court and this court have adjudicated cases involving variances with attached conditions, and neither court has denied the granting of a variance on the basis that a condition was attached. See, e.g., Board of Zoning Adjustment for City of Fultondale v. Summers, 814 So.2d 851, 854-55 (Ala.2001); Ex parte Board of Zoning Adjustment of City of Mobile, 636 So.2d 415, 417 (Ala.1994) (reversing this court’s judgment affirming the ■ variance but noting this court’s reasoning “that the restrictions placed on the variance were ‘a reasonable and effective means of protecting the public interest.’ ”); Moore v. Pettus, 260 Ala. 616, 623, 71 So.2d 814, 820 (1954) (conditional variance denied when condition was not met); Board of Zoning Adjustment of the City of Mobile v. Dauphin Upham Joint Venture, 688 So.2d 823 (Ala.Civ.App.1996) (noting that the trial court’s attempt to satisfy all competing interests by attaching conditions was admirable, but reversing the trial court’s judgment and remanding the cause because the unnecessary-hardship requirement had not been met); City of Trussville v. Simmons, 675 So.2d 474, 475 (Ala.Civ.App.1996) (board of adjustment attached condition to variance; variance denied on other grounds); Bedgood v. United Methodist Children’s Home, 598 So.2d 988 (Ala.Civ.App.1992) (board of adjustment imposed conditions; judgment reversed and cause remanded on grounds unrelated to the conditions); Board of Zoning Adjustment for City of Dothan v. Britt, 456 So.2d 1104 (Ala.Civ.App.1984) (affirming grant of variance with conditions attached by trial court).
Brown challenges the authority of the trial court to attach the conditions to the variance because the enabling statute, § ll-52-80(d)(3), Ala. Code 1975, does not *1221 expressly grant this power to the board. Under the statute, the board has the power
“[t]o authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done.”
Section 11-52-70, Ala.Code 1975, confers to the City of Huntsville, as well as other municipalities, the power to adopt “such ordinances as necessary to carry into effect and make effective the provisions of this article [i.e., §§ 11-52-70-11-52-84].” Pursuant to §§ 11-52-70 and 11-52-80, the City of Huntsville enacted the ordinance expressly authorizing the board to attach conditions to variances:
“In granting any variance, the Board of Adjustment may prescribe appropriate conditions and safeguards in conformity with this ordinance. Violations of such conditions and safeguards, when made a part of the terms under which the variance is granted, shall be deemed a violation of this ordinance....”
Huntsville Zoning Ordinance, § 92.5.4.
Thus, not only is the power of the board to attach conditions not prohibited, but the board is authorized as part of its function to take into account the public interest in determining whether to grant a variance due to an unnecessary hardship. § 11 — 52—80(d)(3); Huntsville Zoning Ordinance, § 92.5.4 (providing that, in determining whether to grant a variance, the board should consider whether “the granting of such variance is in harmony with the spirit of this ordinance and will not be injurious to the neighborhood”); Priest v. Griffin, 284 Ala. 97, 222 So.2d 853 (1969). Attaching conditions to a variance allows a board of adjustment to mitigate the effects of a variance upon neighboring property or the community. Granting a variance can result in myriad possible harmful consequences because variances pertain to particular situations that do not fit in prescribed classifications. Conditions to a variance are needed to customize a solution adequate for protecting adjacent land and maintaining the spirit of the zoning ordinance. 3 K. Young, Anderson’s American Lone of Zoning § 20.61. Without the authority to impose conditions to a variance, a zoning board may face the choice of denying a variance despite the presence of an unnecessary hardship to the petitioner or granting a variance that appears detrimental to the health, safety, or welfare of the community. Given the necessity of a zoning board’s ability to attach conditions to variances in order for it to fully exercise the power to grant variances, the ordinance properly vests the' board, and consequently the trial court, with the power to attach conditions to variances.
We next turn to Brown’s contention that the conditions imposed by the trial court were invalid. Brown primarily argues that the conditions actually amounted to an injunction impermissibly issued by the trial court because no party sought equitable relief. “ ‘ “[Ijn a general sense, every order of a court which commands or forbids is an injunction; but in its accepted legal sense, an injunction is a judicial process or mandate operating in person-am.’”” Nken v. Holder, 556 U.S. 418, 428, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) (quoting Black’s Law Dictionary 800 (8th ed.2004), quoting:in turn 1 H. Joyce, A Treatise on the Law Relating to Injunctions § 1 (1909)). See 42 Am.Jur.2d Injunctions § 1 (2010) (“Because equity jurisdiction is exercised in personam and not in rem, the remedy of an injunction ordinarily operates in personam and is en *1222 forceable ■ against individuals and not against property.” (footnotes omitted)). In contrast, an attached condition “must relate to the use of the land and not to the person by .whom such use is to- be exercised.” 101A C.J.S. Zoning and Land Planning § 307 (footnote omitted).
The conditions in this case prohibit cars from lining up on the premises of the dance studio to drop off or pick up students. Only a shuttle is allowed on the premises for the purpose of transporting students- to and from the dance studio. Violations of the conditions would result in the loss of the variance. Hence, the conditions are directed to Brown’s use of the parking lot and do not, as asserted by Brown, prohibit parents from using adjacent public streets or infringe legislative authority over public roadways. Any effects on the parents are a result of Brown’s control over the property. Brown must follow the conditions because she operates the dance studio and owns the property that is the subject of the variance. The trial court stated that the granting of the variance and the attached conditions “run with the subject property, without regard to the ownership of the subject property.” See 101A C.J.S. Zoning and Land Planning § 307 (“Conditions placed on the use of the premises must run with the land.” (footnote omitted)). The tidal court’s statement does not mean that Brown must provide a shuttle service in perpetuity regardless of the ownership of the property, which Brown asserts. The conditions require that anyone who buys the property in the future will be subject to the conditions to continue the variance. The conditions as stated by the trial court, thus, consistently regulate land use rather than pertain specifically to individuals. Jefferson did not seek an injunction against Brown in this case, and the trial court emphasized that the conditions were not an injunction. Because the trial court did not issue an injunction, we see no merit' to Brown’s arguments that she did not receive notice of a claim for injunctive relief, that the conditions should be invalidated as an impermissible injunction, or that the trial court’s mandating the conditions infringes on the jurisdiction of the court hearing the. separate case on Jefferson’s complaint for injunctive relief against Brown and other defendants.,.
The trial court had the authority conferred to the board to impose reasonable conditions to the variance that are “not arbitrary, unnecessary, or oppressive, or beyond the jurisdiction of the board to impose.” 101A C.J.S. Zoning and Land Planning § 307 (footnotes omitted). Our review of the record reveals that the arrangement of parking spaces in 2005 purposely enabled the system of lining up cars for drop off or pick up of students. The variance allows the dance studio to maintain the same parking-lot design. The “funneling” system is therefore related to the variance. In addition, testimony links the lack of 6 additional parking spaces to increased traffic congestion. Attaching the conditions to the variance as a means of regulating the use of the parking lot was within the jurisdiction of the board and, consequently, the trial court.
Mandating the shuttling of students addresses the traffic-congestion problem by eliminating the general néed for cars to line up in front of the dance studio. Other methods of controlling traffic around the dance studio, such as enforcement of traffic laws and directing traffic on the streets, have not succeeded-in solving the problem. Yet, Brown asserts that parents will refuse to use the shuttle service and either discontinue attending the dance classes or find another dance studio. However, Brown does not refer to any evidence supporting that assertion, and the record does not support Brown’s claim. Brown does not make any other arguments that the conditions are an unreasonable, arbitrary, *1223 or oppressive means to address traffic congestion. Moreover, the trial court clearly asked the parties during the trial for suggestions regarding possible conditions if it were to find that a variance and conditions were warranted, and neither party, including Brown, offered any suggestions or testimony related to possible conditions.
Brown contests the trial court’s statement that it would not have granted the variance without the conditions by claiming that “the great weight of the evidence supports the granting of the variance.” No matter how much evidence supports a finding of an unnecessary hardship to Brown, the board, and consequently the trial court, may not’grant a'variance that is contrary to the public interest. § 11-52-70. There is substantial evidence in the record to support the trial court’s finding that the traffic congestion associated with the dance studio caused problems for the neighbors and was a hazard for emergency vehicles. Brown was not entitled to a variance allowing surrounding properties to experience unmitigated adverse effects that are contrary to the purpose of the ordinance to lessen traffic congestion. The record supports the trial court’s determination that adding conditions to the variance were necessary to address the source of the traffic congestion. Otherwise, the variance was due to be denied.
Brown considers the condition requiring the shuttling of students to be vague “as to whether [it] applied] to students being transported to a dance studio or ... applied] to anyone attempting to gain access to any [successive] business on the property.” We do not agree with Brown’s interpretation of the condition. The trial court was clear in stating that the shuttling requirement pertained to the transportation of students for classes- at the dance studio. The record indicates that the dance studio was specifically constructed for the purpose, of dance instruction, and operation of the dance studio requires accommodating a. high volume, of drop-offs and pick-ups of students within a short amount of time for the classes. Any successive owner of the dance studio must comply with the requirement to use a shuttle for transporting students in order to maintain the privilege of the variance. It is conceivable that a future owner might not wish to continue the business of dance instruction or might not need to accommodate the same volume of students. However, there is no absolute obligation imposed on a new owner, who would have a choice between providing a shuttle service to keep the variance or complying with the ordinance by having the required number of parking spaces. This is the same choice that Brown now faces.
It must be remembered that Brown sought a deviation from the terms of the ordinance. The trial court’s judgment did not impose obligations upon- Brown separate from the requested relief from the ordinance. The trial court could not have granted a variance from the requirements of the ordinance contrary to the public interest. The evidence produced at trial shows that the variance is related to the traffic congestion affecting Jefferson and his neighbors. The trial court properly used its authority in granting a variance to attach conditions for curbing the traffic congestion. Brown has not provided a persuasive reason for invalidating the conditions. We, therefore, affirm the trial court’s judgment.
AFFIRMED.
THOMPSON, P.J., and,PITTMAN, J., concur.
THOMAS and MOORE, JJ., concur in the result, without writings.